UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE RAKOFF

**11 CIV 2666**

——————————————————— x

DAN KORACH, Individually and on Behalf of :
All Others Similarly Situated,

       Plaintiff,

vs.

PUDA COAL, INC., MING ZHAO, LIPING
ZHU, QIONG WU and YAO ZHAO,

       Defendants.

——————————————————— x

Civil Action No.

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL



U.S. DISTRICT COURT
FILED
APR 14 2011
S. D. OF N.Y.

Plaintiff alleges the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Puda Coal, Inc. ("Puda" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal class action on behalf of purchasers of the common stock of Puda between November 13, 2009 and April 11, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.       The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.       Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because many of the acts and practices complained of herein occurred in substantial part in this District.

5.       In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

- 1 -

**PARTIES**

6.      Plaintiff Dan Korach, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Puda during the Class Period and has been damaged thereby.

7.      Puda describes itself as a leading supplier of premium high grade cleaned coal used to produce coke for steel manufacturing in China. The Company is headquartered in Taiyuan, the People's Republic of China.

8.      (a)      Defendant Ming Zhao ("Ming Zhao") is a Co-Founder of Puda and was, at all relevant times, Chairman and Chief Executive Officer of Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a company that was represented to be 90% owned by the Puda during the Class Period. Defendant Ming Zhao also served as Puda's Chief Executive Officer ("CEO") and President from July 15, 2005 through June 25, 2008 and as the Company's Chairman since July 15, 2005. On the last day of the Class Period, April 11, 2011, Defendant Ming Zhao agreed to a voluntary leave of absence from his position of as Chairman of the Company's Board of Directors.

(b)      Defendant Liping Zhu ("Zhu") served, at all relevant times, as the Company's Chief Executive Officer, President and Director.

(c)      Defendant Qiong Wu ("Wu") served, at all relevant times, as the Company's Chief Financial Officer.

(d)      Defendant Yao Zhao ("Yao Zhao") served as the legal representative of Shanxi Putai Resources Limited ("Putai"), a wholly foreign owned enterprise ("WFOE") registered under the wholly foreign-owned enterprises laws of the Peoples Republic of China ("PRC"). During the Class Period, Defendant Yao Zhao was a manager of Puda and a beneficial owner of 5% or more of its outstanding common shares. Defendants Ming Zhao and Yao Zhao are brothers.

- 2 -

(e)     Defendants Ming Zhao, Zhu, Wu and Yao Zhao are collectively referred to herein as the "Individual Defendants."

9.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Puda, were privy to confidential and proprietary information concerning Puda, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Puda, as discussed in detail below. Because of their positions with Puda, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Puda's business.

11.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were

- 3 -

provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.      As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the American Stock Exchange ("AMEX") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Puda's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Puda's common stock would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.      The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Puda's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Puda's business, operations and management and the intrinsic value of Puda's common stock; (ii) enabled the Company to complete a public offering of its shares, on February 16, 2010, whereby the Company sold approximately 2.9 million shares and reaped $13.56 million in gross proceeds; (iii) enabled the Company to complete a public offering of its shares, on December 8, 2010, whereby the Company sold 7.85 million shares

and reaped $101.5 million in gross proceeds; and (iv) caused plaintiff and members of the Class to purchase Puda common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who purchased the common stock of Puda during the Class Period (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15.     The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. Puda stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Puda or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public misrepresented material facts about the business, operations and management of Puda;

(c)    whether the price of Puda common stock was artificially inflated during the Class Period; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

19.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### The Fraudulent Scheme

20.    During the Class Period, Puda's operations were represented to have been "conducted exclusively" through its 90% owned subsidiary, Shanxi Coal. These operations were represented to include the processing and sale of high-grade metallurgical coking coal to industrial enterprises in China, which respectively yielded annual revenues and net income of $325 million and $23.5 million in 2010 and $214 million and $5.5 million in 2009. The Company also represented that it possessed approximately 3.5 million metric tons of annual coal washing capacity in Shanxi Province, China and that it had been approved by the Chinese government to become an acquirer and consolidator of coal mines in Shanxi Province, including eight thermal coal mines in Pinglu County, or the Pinglu Project, and four coking coal mines in Jianhe County, or the Jianhe Project.

21.     In truth and fact, just before the start of the Class Period, Defendants Ming Zhao and Yao Zhao raided the Company's primary operating entity, Shanxi Coal, thereby rendering Puda nothing more than an empty shell company.

22.     According to official Chinese government fillings, in September 2009, without notification to or approval by the Company's shareholders, Defendants Ming Zhao and Yao Zhao fraudulently transferred Puda's sole operating entity, Shanxi Coal to Defendant Ming Zhao. Then, in 2010, Defendant Ming Zhao sold a 49% interest in the misappropriated Shanxi Coal entity and pledged the remaining 51% interest to CITIC Trust Co., Ltd ("CITIC"), a Chinese private equity fund, for RMB245 million ($37.1 million USD).

23.     Thereafter, Defendant Ming Zhao caused Shanxi Coal to borrow RMB3.5 billion ($530.3 million USD) from CITIC at an exorbitantly high annual interest rate of 14.5% to finance the development of its coal mines.

24.     According to Puda's Form 10-K for the year ended December 31, 2010, in 2009, the Shanxi provincial government, in order to improve production efficiency, workplace safety and to reduce coal mine accidents, issued a policy requiring the merger and consolidation of smaller coal mining companies in Shanxi Province. Pursuant to such policy, the Shanxi provincial government awarded certain selected larger coal production enterprises the opportunity to acquire, consolidate and restructure smaller coal mines through mergers, acquisitions and asset or share transfers.

25.     This mandate left Puda's management with two options: (1) arrange for Puda to become an acquirer of other mines, which would require an infusion of significant financial capital at a time when financial entities globally were experiencing a severe liquidity crisis, or (2), dispose of the Company's coal businesses.

26.     Puda's management determined that the Company should pursue an aggressive growth strategy and become a consolidator. Unfortunately for Puda, however, the ability to raise capital during 2009 was severely limited. In order to attract Chinese investors and raise money domestically, the foreign shareholder ownership interest in Puda's sole operating subsidiary, Shanxi Coal, would need to be abandoned. Therefore, in September 2009, Defendants Ming Zhao and Yao Zhao, without notifying or seeking approval of the Company's shareholders, fraudulently transferred Puda's ownership interest in Shanxi Coal to Defendant Ming Zhao.

27.     On September 3, 2009, Defendant Yao Zhao, acting as the legal representative of Puda's Putai illegally and fraudulently authorized Putai to transfer its 90% interest in Shanxi Coal to Defendant Ming Zhao, adding to the 8% interest in Shanxi Coal already owned by Defendant Ming Zhao.

28.     An official government copy of the above noted transfers in Shanxi Coal's ownership interest are available in the filings Puda made with the State Administration for Industry & Commerce of the Peoples Republic of China. These filings reveal that during the Class Period, Defendant Ming Zhao owned 99% of Shanxi Coal.

29.     Then, after misappropriating Shanxi Coal from public investors, Defendant Ming Zhao began looking for domestic investors to fund his aggressive expansion plans for the Company and sought to raise money for Puda in the U.S. capital markets, despite the fact that Puda, absent Shanxi Coal, was just a shell company. On February 18, 2010, Puda sold 3.284 million shares in a public offering raising $14.5 million without disclosing to the investors that Puda no longer owned Shanxi Coal, its sole operating subsidiary.

30.     In July 2010, Defendant Ming Zhao recklessly accepted a highly leveraged RMB2.745 billion ($416 million USD) equity and debt investment from the $31.3 billion Chinese

private equity arm of CITIC. On July 15, 2010 Defendant Ming Zhao sold 49% of Shanxi Coal to CITIC for RMB245 million ($37.1 million USD) and pocketed the proceeds.

31.    On July 19, 2010 Defendant Ming Zhao pledged the remaining 51% interest in Shanxi Coal to CITIC as collateral so that Puda could obtain a three-year, RMB2.5 billion ($379 million USD) loan at a 14.5% annual interest plus fees from CITIC.

32.    On December 16, 2010, Puda again tapped the U.S. capital markets, this time for $101.5 million by selling 7.85 million shares at $12 per share in the Offering in which Defendants failed to disclose to investors that 99% of Shanxi Coal had been transferred to Defendant Ming Zhao, that Defendant Ming Zhao had sold 49% of Shanxi Coal to CITIC for $37.1 million, and that the remaining 51% of Shanxi Coal was pledged a security interest in a $530.3 million loan from CITIC.

33.    In an attempt to cover up his theft, Defendant Ming Zhao transferred the pledged 51% interest in Shanxi Coal to Shanxi Puda Mining Industry Ltd ("Puda Mining"), a former 100% owned subsidiary of Shanxi Coal that, through suspicious shareholder shuffling, Defendant Ming Zhao maneuvered to make it the 51% parent of Shanxi Coal. Puda Mining's 51% interest in Shanxi Coal continues to be completely pledged to CITIC.

34.    According to the government filings, Puda Mining shares are now 90% owned by Putai (the WFOE), 8% Ming Zhao and 2% Yao Zhao. Following these transfers, Puda now owns only 45.9% (90% of 51%) of Shanxi Coal, or about half of the interest Puda owned before Defendant Ming Zhao embarked on his fraudulent campaign.

### Materially False and Misleading Statements Issued During the Class Period

35.    The Class Period begins on November 13, 2009. On that date, Defendants filed with the SEC its Form 10-Q for the quarter ended September 30, 2009 (the "2009 Q3 Form 10-Q"), which

was signed by Defendant Zhu. The 2009 Q3 Form 10-Q included at least the following false and

misleading representations:

> Putai owns 90% of Shanxi Puda Coal Group Co., Ltd. (formerly, Shanxi Puda
> Resources Co. Ltd.)("Shanxi Coal"), a company with limited liability established
> under the laws of the PRC.

*     *     *     *

> As of September 30, 2009, the percentages owned by Mr. Ming Zhao and Mr. Yao
> Zhao in the Group companies are as follows:
>
>> Puda Coal, Inc.: Mr. Ming Zhao (approximately 49%); Mr. Yao Zhao
>> (approximately 12%) held directly.
>>
>> Puda Investment Holding Limited: Mr. Ming Zhao (approximately
>> 49%); Mr. Yao Zhao (approximately 12%) held indirectly through
>> Puda.
>>
>> Shanxi Putai Resources Limited: Mr. Ming Zhao (approximately
>> 49%); Mr. Yao Zhao (approximately 12%) held indirectly through
>> Puda and BVI.
>>
>> Shanxi Puda Coal Group Co., Ltd.: Mr. Ming Zhao (8%); Mr. Yao
>> Zhao (2%) held directly, Mr. Ming Zhao (approximately 44%); Mr.
>> Yao Zhao (approximately 11%) held indirectly through Puda, BVI
>> and Putai.

*     *     *     *

> The accompanying unaudited consolidated financial statements as of September 30,
> 2009 and for the three and nine month periods ended September 30, 2009 and 2008
> have been prepared in accordance with generally accepted accounting principles for
> interim financial information and with the instructions to Form 10-Q and of
> Regulation S-X.

*     *     *     *

> In the opinion of management, these unaudited consolidated interim financial
> statements include all adjustments and disclosures considered necessary to a fair
> statement of the results for the interim periods presented.

*     *     *     *

> In connection with the preparation of this quarterly report on Form 10-Q for the
> fiscal quarter ended September 30, 2009, an evaluation was performed by our
> management, with the participation of CEO and CFO, of the effectiveness of the

design and operation of our disclosure controls and procedures as of the end of the period covered by this quarterly report. Our management concluded that our disclosure controls and procedures were effective as of September 30, 2009.

*       *       *       *

During the period covered by this quarterly report on Form 10-Q, with the assistance of our internal control compliance consultant, we improved the internal control function throughout our company and our culture regarding control consciousness. We have (i) set policies to make sure that account reconciliations and analyses for significant financial statement accounts are reviewed for completeness and accuracy by the Chief Financial Officer, (ii) redesigned control procedures with standard documentation for review and authorization in the purchase, sales and payroll transactions cycles, (iii) implemented a process that ensures the timely review and approval of complex accounting estimates by qualified accounting personnel and subject matter experts, where appropriate, and (iv) established better monitoring controls at the corporate accounting, factory operation and anti-fraud levels. We believe that the actions we have taken have improved our internal control over financial reporting, as well as our disclosure controls and procedures such that, as of September 30, 2009, no material weakness exists in our disclosure controls and procedure or internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

36.     On December 7, 2009, Defendants filed a Form 8-K with the SEC that included the following representations about the Company:

> On December 3, 2009, Shanxi Puda Coal Group Co. Ltd. ("Shanxi Coal"), a subsidiary of Puda Coal, Inc. (the "Company"), closed a share acquisition transaction pursuant to an Agreement of Shares Transfer (the "Agreement") dated May 14, 2009 with Li Jingquan and Feng Ming, both of whom are Chinese citizens, to purchase their equity, constituting 18% ownership, in Shanxi Jianhe Coal Industry Limited Company ("Jianhe Coal") for an aggregate purchase price of RMB 100 million Yuan (approximately $14.6 million). In addition, under Agreement, Chen Guang, the individual owning the other 82% of Jianhe Coal, also guaranteed Shanxi Coal first priority in the right to purchase other shares of Jianhe Coal transferred within the 24-month period following execution of the Agreement.

> Shanxi Coal will not take part in the operational management of the coal mine but will be paid dividends semiannually based on its 18% ownership in Jianhe Coal. In addition, as part of the Agreement and pursuant to a separate Guaranty Letter also entered into on May 14, 2009 (the "Guaranty Letter"), Chen Guang, the individual owning the other 82% of Jianhe Coal, and Jianhe Coal guaranteed to Shanxi Coal that such dividends will be no less than 80% of annual net profits of Jianhe Coal.

- 11 -

37.     On December 17, 2009, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

> On December 11, 2009, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a
> subsidiary of Puda Coal, Inc. entered into a mining right and mining assets transfer
> agreement (the "Da Wa Agreement") with Pinglu County Da Wa Coal Industry Co.,
> Ltd. ("Da Wa Coal"), pursuant to which Shanxi Coal will purchase from Da Wa Coal
> all its tangible assets and coal mining right with respect to a coal mine located in
> Pinglu County, Yuncheng City and Yuanqu County, Shanxi Province of China. As
> consideration, Shanxi Coal will pay Da Wa Coal an aggregate purchase price of
> RMB 190 million (approximately $27.8 million) in cash, of which RMB 46.6 million
> ($6.8 million) is for the tangible assets and RMB 143.3 million ($21.0 million) is for
> the mining right and compensation to Da Wa Coal. A copy of the Da Wa Agreement
> is filed as Exhibit 10.1 to this report and is incorporated herein in its entirety. The
> description of the terms and conditions of the agreement herein is modified and
> supplemented by such reference.
>
> Under the Da Wa Agreement, Shanxi Coal will pay a first installment in the amount
> of RMB 28.5 million (approximately $4.2 million) to Da Wa Coal within three days
> of the execution of the agreement and a second installment in the amount of RMB
> 123.5 million (approximately $18.1 million) within 15 days after transferring the
> registrations and ownership certificates of the mining right and land and property
> deed. Shanxi Coal will pay the remainder of the purchase price, RMB 38 million
> (approximately $5.6 million) upon the one year anniversary of completion of the
> transfer. Mr. Ming Zhao, a significant shareholder and Chairman of Puda Coal
> serves as guarantor of Shanxi Coal's obligations under the Da Wa Agreement.
>
> On December 11, 2009, Shanxi Coal also entered into a mining right and mining
> assets transfer agreement (the "Guanyao Agreement") with Pinglu County Guanyao
> Coal Industry Co., Ltd. ("Guanyao Coal"), pursuant to which, Shanxi Coal will
> purchase from Guanyao Coal all its tangible assets and coal mining right with respect
> to a coal mine located in Pinglu County, Yuncheng City and Yuanqu County, Shanxi
> Province of China. As consideration, Shanxi Coal will pay Guanyao Coal an
> aggregate purchase price of RMB 94.80 million (approximately $13.9 million) in
> cash, of which RMB 37.6 million ($5.5 million) is for the tangible assets and RMB
> 57.2 million ($8.4 million) is for the mining right and compensation of Guanyao
> Coal. A copy of the agreement is filed as Exhibit 10.2 to this report and is
> incorporated herein in its entirety. The description of the terms and conditions of the
> agreement herein is modified and supplemented by such reference.
>
> Under the Guanyao Agreement, Shanxi Coal will pay a first installment in the
> amount of RMB 14.22 million (approximately $2.1 million) to Guanyao Coal within
> three days of the execution of the agreement and a second installment in the amount
> of RMB 61.62 million (approximately $9 million) within 15 days after transferring
> the registrations and ownership certificates with respect to the mining right and land
> and property deed. Shanxi Coal will pay the remainder of the purchase price, RMB

18.96 million (approximately $2.8 million) upon the one year anniversary of completion of the transfer. Mr. Ming Zhao, a significant shareholder and Chairman of Puda Coal, serves as guarantor of Shanxi Coal's obligations under the Guanyao Agreement.

Pursuant to the acquisition agreements, Da Wa Coal and Guanyao Coal will be responsible for canceling or terminating their respective employment contracts (or employment relationships) with their staff, paying all unpaid wage, premium and welfare expenses, and bearing all the expenses caused by the cancellation or termination of the employment contracts. Da Wa Coal and Guanyao Coal also make customary representations and warranties in the agreements with respect to the assets and rights transferred to Shanxi Coal.

Both parties in the above agreements make customary representations and warranties with respect to the assets and rights being transferred. The closing of the transactions under the agreements are subject to customary closing conditions, including registration and transfer of ownership certificates and mining right certificates.

Da Wa Coal and Guanyao Coal are both selling their coal mine assets and coal mining right to Shanxi Coal as a result of the Chinese government's requirement to close, consolidate and restructure smaller coal mines and the government's approval of Puda Coal as one of the few coal mine consolidators that have the capacity to acquire and consolidate such coal mines. Da Wa Coal and Guanyao Coal are closing their coal mine operation and are in the liquidating process. Shanxi Coal is merely acquiring the tangible assets and coal mining right of them in their liquidation process; Shanxi Coal is not acquiring or assuming any business, customers, vendors, business partners, contracts, employees or goodwill from the sellers, nor will Shanxi Coal assume any indebtedness or liabilities from them.

38.     On February 24, 2010, Defendants filed a Form 8-K with the SEC announcing the completion of the sale of 2,855,652 shares of the Company's common stock on February 18, 2010.

39.     On March 24, 2010, Puda issued a press release announcing its financial results for its 2009 fourth quarter and year end, the period ended December 31, 2009. For the quarter, the Company reported revenue of $60.2 million, and net income of $2.3 million or $0.14 per diluted share. For the year, the Company reported revenue of $214.1 million and net income of $5.5 million, or $0.36 per diluted share. Defendant Zhu commented on the Company's results, stating, in pertinent part, as follows:

Despite very challenging market conditions that adversely affected the steel industry during 2009, we finished the year in a strong position by generating sequential

revenue and profit growth as the sector continued to rebound with stronger tonnage sales volume and higher average selling prices. We began 2010 strong from a strategic perspective, as we have been named a consolidator of four additional coal mines in Huozhou County, Shanxi Province, bringing our total number of mines to consolidate to twelve. We are excited to begin transforming from a coal washing business to an integrated coal mining company.

40.    On March 31, 2010, Defendants filed with the SEC its Form 10-K for the year ended

December 31, 2009 (the "2009 Form 10-K"), which was signed by Defendant Zhu, Wu and Ming

Zhao. The 2009 Form 10-K included at least the following false and misleading representations:

We are a supplier of high-grade metallurgical coking coal to the industrial sector in the People's Republic of China (the "PRC" or "China"). Our processed coking coal is primarily purchased by coke and steel producers for the purpose of making the coke required for the steel manufacturing process. Our operations are conducted exclusively by an entity in China, Shanxi Puda Coal Group Co., Ltd ("Shanxi Coal"), which we control through 90% indirect equity ownership.

*       *       *       *

As of December 31, 2009, the percentages owned by Mr. Ming Zhao and Mr. Yao Zhao in the companies are as follows:

Puda Coal, Inc.: Mr. Ming Zhao (approximately 48%); Mr. Yao Zhao (approximately 12%) held directly.

Puda Investment Holding Limited: Mr. Ming Zhao (approximately 48%); Mr. Yao Zhao (approximately 12%) held indirectly through Puda.

Shanxi Putai Resources Limited: Mr. Ming Zhao (approximately 48%); Mr. Yao Zhao (approximately 12%) held indirectly through Puda and BVI.

Shanxi Puda Coal Group Co., Ltd.: Mr. Ming Zhao (8%) held directly in his individual capacity; Mr. Yao Zhao (2%) held directly in his individual capacity, Mr. Ming Zhao (approximately 43%) and Mr. Yao Zhao (approximately 11%) held indirectly through Puda, BVI and Putai.

*       *       *       *

Our management, including the Chief Executive Officer and Chief Financial Officer, assessed as of December 31, 2009 the effectiveness of the Company's internal control over financial reporting. In making this assessment, management used the

criteria set forth in the framework in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on the results of this evaluation, management has concluded that the Company's internal control over financial reporting as of December 31, 2009 was effective.

41.    On May 13, 2010, Puda issued a press release announcing its financial results for its 2010 first quarter, the period ended March 31, 2010. For the quarter, the Company reported revenue of $62 million, a 24% increase over the comparable prior year period, and net income of $5.4 million or $0.31 per diluted share, representing a 157.3% increase over the comparable prior year period. Defendant Zhu commented on the Company's results, stating, in pertinent part, as follows:

> Puda Coal began 2010 with solid revenue and net income growth, thanks to stronger cleaned coal sales volume and higher selling prices reflecting the continuing recovery of China's steel industry. Supported by our coal washing business and coal mine consolidation projects, we are well-positioned for continued growth in the remaining quarters of 2010 and beyond.

42.    On May 17, 2010, Defendants filed with the SEC its Form 10-Q for the quarter ended March 31, 2010 (the "2010 Q1 Form 10-Q"), which was signed by Defendant Zhu. The 2010 Q1 Form 10-Q included at least the following false and misleading representations:

> Putai owns 90% of Shanxi Puda Coal Group Co., Ltd. (formerly, Shanxi Puda Resources Co. Ltd.)("Shanxi Coal"), a company with limited liability established under the laws of the PRC.

> *        *        *        *

> As of March 31, 2010, the percentages owned by Mr. Ming Zhao and Mr. Yao Zhao in the Group companies are as follows:

>> Puda Coal, Inc.: Mr. Ming Zhao (approximately 39%); Mr. Yao Zhao (approximately 10%) held directly.

>> Puda Investment Holding Limited: Mr. Ming Zhao (approximately 39%); Mr. Yao Zhao (approximately 10%) held indirectly through Puda.

>> Shanxi Putai Resources Limited: Mr. Ming Zhao (approximately 39%); Mr. Yao Zhao (approximately 10%) held indirectly through Puda and BVI.

- 15 -

Shanxi Puda Coal Group Co., Ltd.: Mr. Ming Zhao (8%); Mr. Yao
Zhao (2%) held directly, Mr. Ming Zhao (approximately 35%); Mr.
Yao Zhao (approximately 9%) held indirectly through Puda, BVI and
Putai.

The accompanying unaudited consolidated financial statements as of March 31, 2010
and for the three month periods ended March 31, 2010 and 2009 have been prepared
in accordance with generally accepted accounting principles for interim financial
information and with the instructions to Form 10-Q and of Regulation S-X.

*     *     *     *

In the opinion of management, these unaudited consolidated interim financial
statements include all adjustments and disclosures considered necessary to a fair
statement of the results for the interim periods presented.

*     *     *     *

In connection with the preparation of this quarterly report on Form 10-Q for the
fiscal quarter ended March 31, 2010, an evaluation was performed by our
management, with the participation of CEO and CFO, of the effectiveness of the
design and operation of our disclosure controls and procedures as of the end of the
period covered by this quarterly report. Based upon that evaluation, our CEO and
CFO concluded that, as of the end of the period covered by this report, our disclosure
controls and procedures were effective and provided reasonable assurance that the
information required to be disclosed in reports filed under the Exchange Act is
recorded, processed, summarized and reported within the time periods specified in
the SEC's rules and forms, and are designed to ensure that information required to be
disclosed in those reports is accumulated and communicated to management,
including our CEO and CFO, as appropriate to allow timely decisions regarding
required disclosure.

*     *     *     *

During the period covered by this quarterly report on Form 10-Q, there was no
change in our internal controls over financial reporting (as such term is defined in
Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that has materially affected,
or is reasonably likely to materially affect, our internal control over financial
reporting.

43.    On July 1, 2010, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

On June 25, 2010, Shanxi Puda Coal Group Co. Ltd. ("Shanxi Coal"), a 90%
subsidiary of Puda Coal, Inc. (the "Company"), satisfied the conditions precedent
and closed a mining right and mining assets transfer agreement dated December 11,

- 16 -

2009 (the "Da Wa Agreement") with Pinglu County Da Wa Coal Industry Co., Ltd. ("Da Wa Coal"), pursuant to which Shanxi Coal purchased from Da Wa Coal all of its tangible assets and coal mining rights with respect to a coal mine located in Pinglu County, Yuncheng City and Yuanqu County, Shanxi Province of China.    As consideration, Shanxi Coal agrees to pay Da Wa Coal an aggregate purchase price of RMB 190 million (approximately $27.8 million) in cash, of which RMB 46.6 million (approximately $6.8 million) is for the tangible assets and RMB 143.3 million (approximately $21.0 million) is for the mining rights and compensation to Da Wa Coal. A copy of the Da Wa Agreement is filed as Exhibit No. 10.1 to the Company's Current Report on Form 8-K filed December 17, 2009, and is incorporated herein in its entirety.  The description of the terms and conditions of the Da Wa Agreement described herein is modified and supplemented by such reference.

\*        \*        \*        \*

On June 25, 2010, Shanxi Coal satisfied the conditions precedent and closed a mining right and mining assets transfer agreement dated December 11, 2009 (the "Guanyao Agreement") with Pinglu County Guanyao Coal Industry Co., Ltd. ("Guanyao Coal"), pursuant to which Shanxi Coal purchased from Guanyao Coal all of its tangible assets and coal mining rights with respect to a coal mine located in Pinglu County, Yuncheng City and Yuanqu County, Shanxi Province of China. As consideration, Shanxi Coal agrees to pay Guanyao Coal an aggregate purchase price of RMB 94.80 million (approximately $13.9 million) in cash, of which RMB 37.6 million (approximately $5.5 million) is for the tangible assets and RMB 57.2 million (approximately $8.4 million) is for the mining rights and compensation of Guanyao Coal.  A copy of the Guanyao Agreement is filed as Exhibit No. 10.2 to the Company's Current Report on Form 8-K filed December 17, 2009, and is incorporated herein in its entirety. The description of the terms and conditions of the Guanyao Agreement described herein is modified and supplemented by such reference.

\*        \*        \*        \*

Da Wa Coal and Guanyao Coal have sold their coal mine assets and coal mining rights to Shanxi Coal as a result of the Chinese government's requirement to close, consolidate and restructure smaller coal mines and the government's approval of the Company as one of the few coal mine consolidators that has the capacity to acquire and consolidate such coal mines. Da Wa Coal and Guanyao Coal are closing their coal mine operations and are in the liquidating process. Shanxi Coal merely acquired the tangible assets and coal mining rights of them in their liquidation process; Shanxi Coal did not acquire or assume any business, customers, vendors, business partners, contracts, employees or goodwill from the sellers, nor did Shanxi Coal assume any indebtedness or liabilities from them.  Pursuant to the above agreements, Da Wa Coal and Guanyao Coal are responsible for canceling or terminating their respective employment contracts (or employment relationships) with their staff, paying all unpaid wage, premium and welfare expenses, and bearing all the expenses caused by the cancellation or termination of the employment contracts.

44.     On August 5, 2010, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

> On August 1, 2010, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a 90%
> subsidiary of Puda Coal, Inc. (the "Company"), entered into an Investment
> Cooperation Agreement (the "Agreement") with Ming Zhao, Chairman of the Board
> of Directors and a principal stockholder of the Company ("Mr. Zhao"), and Jianping
> Gao, an individual unrelated to the Company ("Mr. Gao"). Pursuant to the
> Agreement, the parties will purchase, consolidate and co-develop six coal mines in
> Pinglu County, Shanghai Province (the "Project").
>
> As a result of the Chinese government's requirement to close, consolidate and
> restructure smaller coal mines, Shanxi Coal was approved by the Shanxi provincial
> government to be one of the few coal mine consolidators that have the capacity to
> acquire and consolidate coal mines. Given the large amount of capital required to
> complete the acquisitions and consolidations under the Project, the independent
> directors of the Board of Directors of the Company determined that it was in the best
> interest of the Company for Shanxi Coal to seek co-investments in the Project.
> Under the Agreement, Shanxi Coal, Mr. Zhao and Mr. Gao will each contribute 40%,
> 30% and 30%, respectively, of the total investment needed for the Project. In
> addition, each of Mr. Zhao and Mr. Gao have agreed to transfer 5.5% of his
> respective voting rights in the project companies, which will hold the coal mines
> after they are acquired, to Shanxi Coal to enable Shanxi Coal to exercise full
> operating and management control of the project companies.
>
> The parties agree to set up an investment supervisory committee that will oversee the
> capital requirement and investments under the Project. They further agree to establish
> a joint bank account as the special account for the Project. Shanxi Coal will serve as
> the sole project manager and report to the investment supervisory committee and the
> other parties. Upon the formal registration and establishment of the project
> companies, Mr. Zhao and Mr. Gao will appoint Shanxi Coal as the proxy holder for
> their investments in the project companies. Mr. Zhao and Mr. Gao authorize Shanxi
> Coal to sign coal mining asset purchase agreements with target coal mines on behalf
> of them and agree to be bound by such agreements. The parties will share the profits
> and bear the risks and losses in connection with the Project, based upon the
> percentages of their equity ownership and limited by the amount of investment
> contributed by each party. Shanxi Coal will be responsible for the other parties'
> losses caused by Shanxi Coal's fraud, gross negligence or breach of material terms of
> the Agreement. The parties further agree that, once the coal mines to be acquired
> and consolidated under the Project are operational, to the extent permitted by the
> Chinese law, at least 80% of the audited annual net profits of the project companies
> established after the coal mine acquisition will be distributed to the parties at a ratio
> that is proportionate to their respective investment.
>
> Under the Agreement, no party may transfer his or its equity rights in the project
> companies without the consent of the parties holding the majority equity rights, and

the party that intends to transfer its or his equity rights is entitled to participating in the consent. Once a transfer is approved, the non-transferring parties will have a right of first refusal, but not an obligation, to purchase the equity rights of the transferring party on the same terms and conditions as offered by a third party. If there are more than one non-transferring parties willing to purchase the equity rights from a transferring party, the non-transferring parties will purchase the equity rights according to their relative investment percentages in the project company. Furthermore, without the consent of all the parties of the Agreement, no party may withdraw its or his investment from the Project.

The parties agree that Shanxi Coal is entitled to purchasing the equity interest of Mr. Zhao and/or Mr. Guo in the project companies at Shanxi Coal's sole discretion at a price determined by an independent professional appraiser. The Agreement will be terminated when all the equity of Mr. Zhao and Mr. Gao in the project companies are purchased by Shanxi Coal, or when all the equity of Mr. Zhao and Mr. Gao in the project companies are specifically registered under their names at the relevant government authority, at which time the rights and obligations of the parties with respect to the project companies will be governed by the organizational documents of the project companies.

Mr. Zhao is Chairman of the Board of Directors and a principal stockholder of the Company. Neither the Company, Shanxi Coal or their affiliates nor any director, officer or any associate of any such director or officer thereof has any material relationship with Mr. Gao other than in respect of the Agreement. A committee of the Board of Directors of the Company comprised solely of independent directors negotiated terms of the Agreement on behalf of the Company and approved the Agreement.

45.     On August 16, 2010, Defendants filed with the SEC its Form 10-Q for the quarter ended June 30, 2010 (the "2010 Q2 Form 10-Q"), which was signed by Defendant Zhu. The 2010 Q2 Form 10-Q included at least the following false and misleading representations:

Putai owns 90% of Shanxi Puda Coal Group Co., Ltd. (formerly, Shanxi Puda Resources Co. Ltd.)("Shanxi Coal"), a company with limited liability established under the laws of the PRC.

\*       \*       \*       \*

As of June 30, 2010, the percentages owned by Mr. Ming Zhao and Mr. Yao Zhao in the companies are as follows:

Puda Coal, Inc.: Mr. Ming Zhao (approximately 37%); Mr. Yao Zhao (approximately 9%) held directly.

Puda Investment Holding Limited: Mr. Ming Zhao (approximately 37%); Mr. Yao Zhao (approximately 9%) held indirectly through Puda.

Shanxi Putai Resources Limited: Mr. Ming Zhao (approximately 37%); Mr. Yao Zhao (approximately 9%) held indirectly through Puda and BVI.

Shanxi Puda Coal Group Co., Ltd.: Mr. Ming Zhao (10%) held directly, Mr. Ming Zhao (approximately 33%) held indirectly through Puda, BVI and Putai.

\*       \*       \*       \*

The accompanying unaudited consolidated financial statements as of June 30, 2010 and for the thee and six month periods ended June 30, 2010 and 2009 have been prepared in accordance with generally accepted accounting principles for interim financial information and with the instructions to Form 10-Q and of Regulation S-X.

\*       \*       \*       \*

In the opinion of management, these unaudited consolidated interim financial statements include all adjustments and disclosures considered necessary to a fair statement of the results for the interim periods presented.

\*       \*       \*       \*

In connection with the preparation of this quarterly report on Form 10-Q for the fiscal quarter ended June 30, 2010, an evaluation was performed by our management, with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this quarterly report. Based upon that evaluation, our CEO and CFO concluded that, as of the end of the period covered by this report, our disclosure controls and procedures were effective and provided reasonable assurance that the information required to be disclosed in reports filed under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and are designed to ensure that information required to be disclosed in those reports is accumulated and communicated to management, including our CEO and CFO, as appropriate to allow timely decisions regarding required disclosure.

\*       \*       \*       \*

During the period covered by this quarterly report on Form 10-Q, there was no change in our internal controls over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that has materially affected,

or is reasonably likely to materially affect, our internal control over financial reporting.

46.     On October 25, 2010, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

> On October 20, 2010, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a 90% subsidiary of Puda Coal, Inc. (the "Company") entered into a mining right and mining assets transfer agreement (the "Xuhutuo Agreement") with Pinglu County Sanmenzhen Xuhutuo Coal Mine Ltd. ("Xuhutuo Coal"), pursuant to which Shanxi Coal will purchase from Xuhutuo Coal all its tangible assets and coal mining rights with respect to coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal will pay Xuhutuo Coal an aggregate purchase price of RMB 125,000,000 (approximately $18.77 million) in cash, of which RMB 20,660,000 (approximately $3.10 million) is for the tangible assets and RMB 104,340,000 (approximately $15.67 million) is for the mining rights of and compensation to Xuhutuo Coal. A copy of the Xuhutuo Agreement is filed as Exhibit 10.1 to this report and is incorporated herein in its entirety. The description of the terms and conditions of the Xuhutuo Agreement herein is modified and supplemented by such reference.

> Under the Xuhutuo Agreement, Shanxi Coal agrees to pay 50% of the purchase price (RMB 62,500,000, or approximately $9.39 million) within three days of the execution of the agreement, 40% of the purchase price (RMB 50,000,000, or approximately $7.51 million) within 15 days after the registration and the ownership certificates of the mining rights and property deed are transferred to Shanxi Coal, and the remaining 10% of the purchase price (RMB 12,500,000, or approximately $1.87) six months after the completion of the transfer.

> On October 20, 2010, Shanxi Coal entered into a mining right and mining assets transfer agreement (the "Daqi Agreement," and together with the Xuhutuo Agreement, the "Agreements") with Pinglu County Daqi Coal Mine Ltd. ("Daqi Coal"), pursuant to which Shanxi Coal will purchase from Daqi Coal all its tangible assets and coal mining rights with respect to coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal will pay Daqi Coal an aggregate purchase price of RMB 66,200,000 (approximately $9.94 million) in cash, of which RMB 8,348,300 (approximately $1.25 million) is for the tangible assets and RMB 57,851,700 (approximately $8.69 million) is for the mining rights of and compensation to Daqi Coal. A copy of the Daqi Agreement is filed as Exhibit 10.2 to this report and is incorporated herein in its entirety. The description of the terms and conditions of the Daqi Agreement herein is modified and supplemented by such reference.

> Under the Daqi Agreement, Shanxi Coal agrees to pay 50% of the purchase price of the Daqi Agreement (RMB 33,100,000, or approximately $4.97 million) within three days of the execution of the Daqi Agreement, 40% of the purchase price (RMB

26,480,000, or approximately $3.97 million) within 15 days after the registration and the ownership certificates of the mining rights and property deed are transferred to Shanxi Coal, and the remaining 10% of the purchase price (RMB 6,620,000, or approximately $994,000) six months after the completion of the transfer.

Pursuant to the Agreements, Xuhutuo Coal and Daqi Coal will be responsible for canceling or terminating their respective employment contracts (or labor relationships) with their staff, paying all unpaid wage, premium and welfare expenses, and bearing all of the expenses caused by the cancellation or termination of the employment contracts.

Xuhutuo Coal and Daqi Coal make customary representations and warranties in the Agreements with respect to the assets and rights transferred to Shanxi Coal. The closing of the transactions under the Agreements are subject to customary closing conditions, including registration and transfer of ownership certificates and mining right certificates.

Xuhutuo Coal and Daqi Coal are both selling their coal mine assets and coal mining right to Shanxi Coal as a result of the Chinese government's requirement to close, consolidate and restructure smaller coal mines and the government's approval of the Company as one of the few coal mine consolidators that have the capacity to acquire and consolidate such coal mines. Xuhutuo Coal and Daqi Coal are closing their coal mine operations and are in the process of liquidating. Shanxi Coal is merely acquiring the tangible assets and coal mining rights of Xuhutuo Coal and Daqi during their liquidation process; Shanxi Coal is not acquiring or assuming any business, customers, vendors, business partners, contracts, employees or goodwill from the sellers, nor will Shanxi Coal assume any indebtedness or liabilities from them.

Neither the Company, Shanxi Coal or their affiliates, nor any director, officer or any associate of any such director or officer thereof, has any material relationship with Daqi Coal or Xuhutuo Coal other than in respect of the Agreements.

47.    On November 3, 2010, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

On October 28, 2010, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a 90% subsidiary of Puda Coal, Inc. (the "Company") entered into a mining right and mining assets transfer agreement (the "Donggou Agreement") with Pinglu County Donggou Coal Mine ("Donggou Coal"), pursuant to which Shanxi Coal will purchase from Gonggou Coal all its tangible assets and coal mining rights with respect to certain coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal will pay Gonggou Coal an aggregate purchase price of RMB 77,500,000 (approximately $11.59 million) in cash, of which RMB 9,130,000 (approximately $1.37 million) is for the tangible assets and RMB 68,370,000 (approximately $10.22 million) is for the mining rights of and compensation to Donggou Coal. A copy of the Gonggou Agreement is filed as Exhibit 10.1 to this

report and is incorporated herein in its entirety. The description of the terms and conditions of the Gonggou Agreement herein is modified and supplemented by such reference.

On October 28, 2010, Shanxi Coal entered into a mining right and mining assets transfer agreement (the "Renling Agreement," and together with the Gonggou Agreement, the "Agreements") with Shanxi Pinglu Renling Coal Industry Ltd. ("Renling Coal"), pursuant to which Shanxi Coal will purchase from Renling Coal all its tangible assets and coal mining rights with respect to certain coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal will pay Renling Coal an aggregate purchase price of RMB 205,000,000 (approximately $30.65 million) in cash, of which RMB 38,830,000 (approximately $5.80 million) is for the tangible assets and RMB 166,170,000 (approximately $24.85 million) is for the mining rights of and compensation to Renling Coal. A copy of the Renling Agreement is filed as Exhibit 10.2 to this report and is incorporated herein in its entirety. The description of the terms and conditions of the Renling Agreement herein is modified and supplemented by such reference.

Under each Agreement, Shanxi Coal agrees to pay 50% of the purchase price within three days of the execution of the agreement, 40% of the purchase price within 30 days after assets transfer is completed and the mining permits and property deeds are transferred, and the remaining 10% of the purchase price six months after the mining permits and property deeds are transferred.

Pursuant to the Agreements, each seller will be responsible for canceling or terminating their respective employment contracts (or labor relationships) with their staff, paying all unpaid wage, premium and welfare expenses, and bearing all of the expenses caused by the cancellation or termination of the employment contracts.

Each seller makes customary representations and warranties in the Agreements with respect to the assets and rights transferred to Shanxi Coal. The closing of the transactions under the Agreements are subject to customary closing conditions, including registration and transfer of ownership certificates and mining right certificates.

The sellers are both selling their coal mine assets and coal mining right to Shanxi Coal as a result of the Chinese government's requirement to close, consolidate and restructure smaller coal mines and the government's approval of the Company as one of the few coal mine consolidators that have the capacity to acquire and consolidate such coal mines. The sellers are closing their coal mine operations and are in the process of liquidating. Shanxi Coal is merely acquiring the tangible assets and coal mining rights of the sellers during their liquidation process; Shanxi Coal is not acquiring or assuming any business, customers, vendors, business partners, contracts, employees or goodwill from the sellers, nor will Shanxi Coal assume any indebtedness or liabilities from them.

Neither the Company, Shanxi Coal or their affiliates, nor any director, officer or any associate of any such director or officer thereof, has any material relationship with the sellers other than in respect of the Agreements.

48.    On November 15, 2010, Defendants filed with the SEC its Form 10-Q for the quarter ended September 30, 2010, which was signed by Defendant Zhu.  The quarterly report included at least the following false and misleading representations:

Putai owns 90% of Shanxi Puda Coal Group Co., Ltd. (formerly, Shanxi Puda Resources Co. Ltd.)("Shanxi Coal"), a company with limited liability established under the laws of the PRC.

*      *      *      *

As of September 30, 2010, the percentages owned by Mr. Ming Zhao and Mr. Yao Zhao in the companies are as follows:

Puda Coal, Inc.: Mr. Ming Zhao (approximately 37%); Mr. Yao Zhao (approximately 9%) held directly.

Puda Investment Holding Limited: Mr. Ming Zhao (approximately 37%); Mr. Yao Zhao (approximately 9%) held indirectly through Puda.

Shanxi Putai Resources Limited: Mr. Ming Zhao (approximately 37%); Mr. Yao Zhao (approximately 9%) held indirectly through Puda and BVI.

Shanxi Puda Coal Group Co., Ltd.: Mr. Ming Zhao (10%) held directly, Mr. Ming Zhao (approximately 33%) held indirectly through Puda, BVI and Putai.

*      *      *      *

The accompanying unaudited consolidated financial statements as of September 30, 2010 and for the three and nine month periods ended September 30, 2010 and 2009 have been prepared in accordance with generally accepted accounting principles for interim financial information and with the instructions to Form 10-Q and of Regulation S-X.

*      *      *      *

In the opinion of management, these unaudited consolidated interim financial statements include all adjustments and disclosures considered necessary to a fair statement of the results for the interim periods presented.

*     *     *     *

In connection with the preparation of this quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2010, an evaluation was performed by our management, with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this quarterly report. Based upon that evaluation, our CEO and CFO concluded that, as of the end of the period covered by this report, our disclosure controls and procedures were effective and provided reasonable assurance that the information required to be disclosed in reports filed under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and are designed to ensure that information required to be disclosed in those reports is accumulated and communicated to management, including our CEO and CFO, as appropriate to allow timely decisions regarding required disclosure.

*     *     *     *

During the period covered by this quarterly report on Form 10-Q, there was no change in our internal controls over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

49.    On December 8, 2010, Defendants issued a press release announcing that it intended to sell its common stock in an Offering underwritten by Macquarie Capital (USA) Inc. ("Macquarie") and Brean Murray, Carret & Co., LLC ("Brean Murray").

50.    On December 29, 2010, Defendants filed a Form 8-K with the SEC that included the following representations about the Company:

On December 23, 2010, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a 90% subsidiary of Puda Coal, Inc. (the "Company") satisfied the conditions precedent and closed a mining right and mining assets transfer agreement dated October 20, 2010 (the "Xuhutuo Agreement") with Pinglu County Sanmenzhen Xuhutuo Coal Mine Ltd. ("Xuhutuo Coal"), pursuant to which Shanxi Coal purchased from Xuhutuo Coal all its tangible assets and coal mining rights with respect to coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal agrees to pay Xuhutuo Coal an aggregate purchase price of RMB 125,000,000 (approximately $18.77 million) in cash, of which RMB 20,660,000 (approximately $3.10 million) is for the tangible assets and RMB 104,340,000 (approximately $15.67 million) is for the mining rights of and compensation to Xuhutuo Coal. A copy of the Xuhutuo Agreement is filed as Exhibit No. 10.1 to the Company's Current Report on Form 8-K filed October 25, 2010, and is incorporated herein in its

entirety. The description of the terms and conditions of the Xuhutuo Agreement described herein is modified and supplemented by such reference.

Under the Xuhutuo Agreement, Shanxi Coal paid 50% of the purchase price on October 20, 2010 and 40% of the purchase price on December 23, 2010 after assets transfer was completed and the mining permits and property deeds were transferred. Shanxi Coal will pay the remaining 10% of the purchase price six months after the mining permits and property deeds were transferred.

On December 23, 2010, Shanxi Coal satisfied the conditions precedent and closed a mining right and mining assets transfer agreement dated October 20, 2010 (the "Daqi Agreement") with Pinglu County Daqi Coal Mine Ltd. ("Daqi Coal"), pursuant to which Shanxi Coal purchased from Daqi Coal all its tangible assets and coal mining rights with respect to coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal agrees to pay Daqi Coal an aggregate purchase price of RMB 66,200,000 (approximately $9.94 million) in cash, of which RMB 8,348,300 (approximately $1.25 million) is for the tangible assets and RMB 57,851,700 (approximately $8.69 million) is for the mining rights of and compensation to Daqi Coal. A copy of the Daqi Agreement is filed as Exhibit No. 10.2 to the Company's Current Report on Form 8-K filed October 25, 2010, and is incorporated herein in its entirety. The description of the terms and conditions of the Daqi Agreement described herein is modified and supplemented by such reference.

Under the Daqi Agreement, Shanxi Coal paid 50% of the purchase price on October 20, 2010 and 40% of the purchase price on December 23, 2010 after the assets transfer was completed and the mining permits and property deeds were transferred. Shanxi Coal will pay the remaining 10% of the purchase price six months after the mining permits and property deeds were transferred.

On December 24, 2010, Shanxi Coal satisfied the conditions precedent and closed a mining right and mining assets transfer agreement dated October 28, 2010 (the "Donggou Agreement") with Pinglu County Donggou Coal Mine ("Donggou Coal"), pursuant to which Shanxi Coal purchased from Donggou Coal all its tangible assets and mining coal rights with respect to certain coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal agrees to Donggou Coal an aggregate purchase price of RMB 77,500,000 (approximately $11.59 million) in cash, of which RMB 9,130,000 (approximately $1.37 million) is for the tangible assets and RMB 68,370,000 (approximately $10.22 million) is for the mining rights of and compensation to Donggou Coal. A copy of the Donggou Agreement is filed as Exhibit No. 10.1 to the Company's Current Report on Form 8-K filed November 3, 2010, and is incorporated herein in its entirety. The description of the terms and conditions of the Donggou Agreement described herein is modified and supplemented by such reference.

Under the Donggou Agreement, Shanxi Coal paid 50% of the purchase price to Donggou Coal on October 28, 2010 and 40% of the purchase price on December 24, 2010 after the assets transfer was completed and the mining permits and property

deeds were transferred, Shanxi Coal will pay the remaining 10% of the purchase price six months after the mining permits and property deeds were transferred.

On December 24, 2010, Shanxi Coal satisfied the conditions precedent and closed a mining right and mining assets transfer agreement dated October 28, 2010 (the "Renling Agreement," and together with the Donggou Agreement, the Xuhutuo Agreement and the Daqi Agreement, the "Agreements") with Shanxi Pinglu Renling Coal Industry Ltd. ("Renling Coal"), pursuant to which Shanxi Coal purchased from Renling Coal all its tangible assets and coal mining rights with respect to certain coal mining enterprises located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal agrees to pay Renling Coal an aggregate purchase price of RMB 205,000,000 (approximately $30.65 million) in cash, of which RMB 38,830,000 (approximately $5.80 million) is for the tangible assets and RMB 166,170,000 (approximately $24.85 million) is for the mining rights of and compensation to Renling Coal. A copy of the Renling Agreement is filed as Exhibit No. 10.2 to the Company's Current Report on Form 8-K filed November 3, 2010, and is incorporated herein in its entirety. The description of the terms and conditions of the Renling Agreement described herein is modified and supplemented by such reference.

Under the Renling Agreement, Shanxi Coal paid 50% of the purchase price to Renling Coal on October 28, 2010 and 40% of the purchase price on December 24, 2010 after the assets transfer was completed and the mining permits and property deeds were transferred. Shanxi Coal will pay the remaining 10% of the purchase price six months after the mining permits and property deeds were transferred.

Xuhutuo Coal, Daqi Coal, Donggou Coal and Renling Coal have sold their coal mine assets and coal mining rights to Shanxi Coal as a result of the Chinese government's requirement to close, consolidate and restructure smaller coal mines and the government's approval of the Company as one of the few coal mine consolidators that has the capacity to acquire and consolidate such coal mines. Xuhutuo Coal, Daqi Coal, Donggou Coal and Renling Coal are closing their coal mine operations and are in the liquidating process. Shanxi Coal merely acquired the tangible assets and coal mining rights of them in their liquidation process; Shanxi Coal did not acquire or assume any businesses, customers, vendors, business partners, contracts, employees or goodwill from the sellers, nor did Shanxi Coal assume any indebtedness or liabilities from them. Pursuant to the Agreements, Xuhutuo Coal, Daqi Coal, Donggou Coal and Renling Coal are responsible for canceling or terminating their respective employment contracts (or employment relationships) with their staff, paying all unpaid wage, premium and welfare expenses, and bearing all the expenses caused by the cancellation or termination of the employment contracts.

As previously disclosed in the Company's current report on Form 8-K filed August 5, 2010, on August 1, 2010, Shanxi Coal entered into an investment cooperation agreement with Ming Zhao, Chairman of the Company's Board and its principal stockholder, and Jianping Gao, an individual unrelated to the Company (the "Investment Cooperation Agreement"). Pursuant to the agreement, the parties will

purchase, consolidate and re-develop six additional coal mines in Pinglu County, Shanxi Province, including the four coal mines described above. Shanxi Coal, Mr. Zhao and Mr. Gao will contribute 40%, 30% and 30%, respectively, of the total investment needed for the project. Shanxi Coal will be the project manager; in addition, each of Mr. Zhao and Mr. Gao has agreed to transfer 5.5% of his respective voting rights in the project companies, which will hold the coal mines after they are acquired, to Shanxi Coal to enable Shanxi Coal to exercise full operating and management control of the project companies. The parties will share the profits based upon the above investment contribution percentages and bear the risks and losses in connection with the project which will be limited by the amount of investment contributed by each party. The parties further agree that, once the coal mines to be acquired and consolidated under the project are operational, to the extent permitted by the Chinese law, at least 80% of the audited annual net profits of the project companies established after the coal mine acquisition will be distributed to the parties at a ratio that is proportionate to their respective investment. Shanxi Coal is entitled to purchase the equity interest of Mr. Zhao and/or Mr. Gao in the project companies at Shanxi Coal's sole discretion at a price determined by an independent professional appraiser.

A new project company named Shanxi Pinglu Dajinhe Jinmen Coal Industry Ltd. holds the assets and mining rights of the Xuhutuo and Daqi coal mines and a new project company named Shanxi Pinglu Dajinhe Jinyi Coal Industry Ltd. holds the assets and mining rights of the Renling and Donggou coal mines, all of which are subject to profit and cost sharing arrangement under the Investment Cooperation Agreement.

Neither the Company, Shanxi Coal or their affiliates nor any director, officer or any associate of any such director or officer thereof has any material relationship with Xuhutuo Coal, Daqi Coal, Donngou Coal or Renling Coal other than in respect of the Agreements.

51. On January 4, 2011, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

On December 28, 2010, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a 90% subsidiary of Puda Coal, Inc. (the "Company") entered into a mining rights and mining assets transfer agreement (the "Anrui Agreement") with Pinglu County Anrui Coal Industry Co., Ltd. ("Anrui Coal"), pursuant to which Shanxi Coal will purchase from Anrui Coal all its tangible assets and coal mining rights located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal will pay Anrui Coal an aggregate purchase price of RMB 250,000,000 (approximately $37.43 million) in cash, of which RMB 64,810,000 ($9.70 million) is for Anrui Coal's tangible assets and RMB 185,190,000 ($27.77 million) is for the mining rights of and compensation to Anrui. A copy of the Anrui Agreement is filed as Exhibit 10.1 to this report and is incorporated herein in its entirety. The description of the terms and conditions of the Anrui Agreement herein is modified and supplemented by such reference.

On December 28, 2010, Shanxi Coal entered into a mining rights and mining assets transfer agreement (the "Chuntouao Agreement") with Pinglu County Chuntouao Coal Mine ("Chuntouao Coal"), pursuant to which Shanxi Coal will purchase from Chuntouao Coal all its tangible assets and coal mining rights located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal will pay Chuntouao Coal an aggregate purchase price of RMB 140,000,000 (approximately $20.96 million) in cash, of which RMB 32,360,000 ($4.84 million) is for Chuntouao Coal's tangible assets and RMB 107,640,000 ($16.11 million) is for the mining rights of and compensation to Chuntouao Coal. A copy of the Chuntouao Agreement is filed as Exhibit 10.2 to this report and is incorporated herein in its entirety. The description of the terms and conditions of the Chuntouao Agreement herein is modified and supplemented by such reference.

On December 28, 2010, Shanxi Coal entered into a mining rights and mining assets transfer agreement (the "Xiapingcun Agreement") with Pinglu County Xiapingcun Coal Mine ("Xiapingcun Coal"), pursuant to which Shanxi Coal will purchase from Xiapingcun Coal all its tangible assets and coal mining rights located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal will pay Xiapingcun Coal an aggregate purchase price of RMB 61,200,000 (approximately $9.16 million) in cash, of which RMB 18,530,000 ($2.77 million) is for Xiapingcun Coal's tangible assets and RMB 42,670,000 ($6.39 million) is for the mining rights of and compensation to Xiapingcun Coal. A copy of the Xiapingcun Agreement is filed as Exhibit 10.3 to this report and is incorporated herein in its entirety. The description of the terms and conditions of the Xiapingcun Agreement herein is modified and supplemented by such reference.

Under each agreement, Shanxi Coal agrees to pay 50% of the purchase price within three days of the execution of the agreement, 40% of the purchase price within 30 days after assets transfer is completed and the mining permits and property deeds are transferred, and the remaining 10% of the purchase price six months after the mining permits and property deeds are transferred.

Pursuant to the agreements, each seller will be responsible for canceling or terminating their respective employment contracts (or labor relationships) with their staff, paying all unpaid wage, premium and welfare expenses, and bearing all of the expenses caused by the cancellation or termination of the employment contracts.

Each seller makes customary representations and warranties in the agreements with respect to the assets and rights transferred to Shanxi Coal. The closing of the transactions under the agreements are subject to customary closing conditions, including registration and transfer of ownership certificates and mining right certificates.

The sellers are all selling their coal mine assets and coal mining right to Shanxi Coal as a result of the Chinese government's requirement to close, consolidate and restructure smaller coal mines and the government's approval of the Company as a coal mine consolidator to acquire and consolidate such coal mines. The sellers are

closing or have already closed their coal mine operations and are in the process of liquidating. Shanxi Coal is merely acquiring the tangible assets and coal mining rights of the sellers during their liquidation process; Shanxi Coal is not acquiring or assuming any business, customers, vendors, business partners, contracts, employees or goodwill from the sellers, nor will Shanxi Coal assume any indebtedness or liabilities from them.

As previously disclosed in the Company's current report on Form 8-K filed August 5, 2010, on August 1, 2010, Shanxi Coal entered into an investment cooperation agreement with Ming Zhao, Chairman of the Company's Board and its principal stockholder, and Jianping Gao, an individual unrelated to the Company (the "Investment Cooperation Agreement"). Pursuant to the Investment Cooperation Agreement, the parties will purchase, consolidate and re-develop certain coal mines in Pinglu County, Shanxi Province, including the coal mines described above. Shanxi Coal, Mr. Zhao and Mr. Gao will contribute 40%, 30% and 30%, respectively, of the total investment needed for the project. Shanxi Coal will be the project manager; in addition, each of Mr. Zhao and Mr. Gao has agreed to transfer 5.5% of his respective voting rights in the project companies, which will hold the coal mines after they are acquired, to Shanxi Coal to enable Shanxi Coal to exercise full operating and management control of the project companies. The parties will share the profits based upon the above investment contribution percentages and bear the risks and losses in connection with the project which will be limited by the amount of investment contributed by each party. The parties further agree that, once the coal mines to be acquired and consolidated under the project are operational, to the extent permitted by the Chinese law, at least 80% of the audited annual net profits of the project companies established after the coal mine acquisition will be distributed to the parties at a ratio that is proportionate to their respective investment. Shanxi Coal is entitled to purchase the equity interest of Mr. Zhao and/or Mr. Gao in the project companies at Shanxi Coal's sole discretion at a price determined by an independent professional appraiser.

A new project company named Shanxi Pinglu Dajinhe Anrui Coal Industry Co., Ltd. will hold the assets and mining rights of the above acquired mines.

Neither the Company, Shanxi Coal or their affiliates, nor any director, officer or any associate of any such director or officer thereof, has any material relationship with the sellers other than in respect of the above disclosed agreements

52.     On January 14, 2011, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

On January 10, 2011, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a 90% subsidiary of Puda Coal, Inc. (the "Company"), entered into a Supplementary Agreement of Investment Cooperation (the "Supplementary Agreement") with Ming Zhao, Chairman of the board of directors and a principal stockholder of the Company ("Mr. Zhao"), and Jianping Gao, an individual unrelated to the Company ("Mr. Gao).

The Supplementary Agreement amends and supplements that certain Agreement of Investment Cooperation (the "Agreement") among the same parties, dated August 1, 2010.

Pursuant to the Agreement, the parties will purchase, consolidate and co-develop six coal mines in Pinglu County, Shanxi Province (the "Phase Two of the Pinglu Project"). Pursuant to the Supplementary Agreement, the parties will include the Pinglu County Xiapincun Coal Mine, a coal mine which was not initially contemplated to be acquired as part of Phase Two of the Pinglu Project, in Phase Two of the Pinglu Project and place the entire mining assets of Xiapincun Coal Mine into Shanxi Pinglu Dajinhe Anrui Coal Industry Co., Ltd., a project company established to hold the assets of certain coal mines acquired by Shanxi Coal under Phase Two of the Pinglu Project.

Mr. Zhao is Chairman of the board of directors and a principal stockholder of the Company. Neither the Company, Shanxi Coal or their affiliates nor any director, officer or any associate of any such director or officer thereof has any material relationship with Mr. Gao other than in respect of the Agreement and the Supplementary Agreement.

53.     On February 24, 2011, Defendants filed a Form 8-K with the SEC that included the

following representations about the Company:

On February 17, 2011, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), a 90% subsidiary of Puda Coal, Inc. (the "Company") satisfied the conditions precedent and closed a mining rights and mining assets transfer agreement dated December 28, 2010 (the "Anrui Agreement") with Pinglu County Anrui Coal Industry Co., Ltd. ("Anrui Coal"), pursuant to which Shanxi Coal purchased from Anrui Coal all its tangible assets and coal mining rights located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal agreed to pay Anrui Coal an aggregate purchase price of RMB 250,000,000 (approximately $37.43 million) in cash, of which RMB 64,810,000 ($9.70 million) is for Anrui Coal's tangible assets and RMB 185,190,000 ($27.77 million) is for the mining rights of and compensation to Anrui. A copy of the Anrui Agreement is filed as Exhibit 10.1 to the Company's Current Report on Form 8-K filed January 4, 2011, and is incorporated herein in its entirety. The description of the terms and conditions of the Anrui Agreement herein is modified and supplemented by such reference.

Under the Anrui Agreement, Shanxi Coal paid 50% of the purchase price on December 28, 2010 and 40% of the purchase price on February 17, 2011 after the assets transfer was completed and the mining permits and property deeds were transferred. Shanxi Coal will pay the remaining 10% of the purchase price six months after the mining permits and property deeds were transferred.

On February 18, 2011, Shanxi satisfied the conditions precedent and closed a mining rights and mining assets transfer agreement dated December 28, 2010 (the

"Xiapingcun Agreement") with Pinglu County Xiapingcun Coal Mine ("Xiapingcun Coal"), pursuant to which Shanxi Coal purchased from Xiapingcun Coal all its tangible assets and coal mining rights located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal agreed to pay Xiapingcun Coal an aggregate purchase price of RMB 61,200,000 (approximately $9.16 million) in cash, of which RMB 18,530,000 ($2.77 million) is for Xiapingcun Coal's tangible assets and RMB 42,670,000 ($6.39 million) is for the mining rights of and compensation to Xiapingcun Coal. A copy of the Xiapingcun Agreement is filed as Exhibit 10.3 to the Company's Current Report on Form 8-K filed January 4, 2011, and is incorporated herein in its entirety. The description of the terms and conditions of the Xiapingcun Agreement herein is modified and supplemented by such reference.

Under the Xiapingcun Agreement, Shanxi Coal paid 50% of the purchase price on December 28, 2010 and 40% of the purchase price on February 18, 2011 after the assets transfer was completed and the mining permits and property deeds were transferred. Shanxi Coal will pay the remaining 10% of the purchase price six months after the mining permits and property deeds were transferred.

On February 22, 2011, Shanxi Coal satisfied the conditions precedent and closed a mining rights and mining assets transfer agreement dated December 28, 2010 (the "Chuntouao Agreement") with Pinglu County Chuntouao Coal Mine ("Chuntouao Coal"), pursuant to which Shanxi Coal purchased from Chuntouao Coal all its tangible assets and coal mining rights located in Pinglu County, Shanxi Province. As consideration, Shanxi Coal agreed to pay Chuntouao Coal an aggregate purchase price of RMB 140,000,000 (approximately $20.96 million) in cash, of which RMB 32,360,000 ($4.84 million) is for Chuntouao Coal's tangible assets and RMB 107,640,000 ($16.11 million) is for the mining rights of and compensation to Chuntouao Coal. A copy of the Chuntouao Agreement is filed as Exhibit 10.2 to the Company's Current Report on Form 8-K filed January 4, 2011, and is incorporated herein in its entirety. The description of the terms and conditions of the Chuntouao Agreement herein is modified and supplemented by such reference.

Under the Chuntouao Agreement, Shanxi Coal paid 50% of the purchase price on December 28, 2010 and 40% of the purchase price on February 22, 2011 after assets transfer was completed and the mining permits and property deeds were transferred. Shanxi Coal will pay the remaining 10% of the purchase price six months after the mining permits and property deeds were transferred.

Pursuant to the agreements, each seller is responsible for canceling or terminating their respective employment contracts (or labor relationships) with their staff, paying all unpaid wage, premium and welfare expenses, and bearing all of the expenses caused by the cancellation or termination of the employment contracts.

The sellers all sold their coal mine assets and coal mining right to Shanxi Coal as a result of the Chinese government's requirement to close, consolidate and restructure smaller coal mines and the government's approval of the Company as a coal mine consolidator to acquire and consolidate such coal mines. The sellers are closing or

have already closed their coal mine operations and are in the process of liquidating. Shanxi Coal merely acquired the tangible assets and coal mining rights of the sellers during their liquidation process; Shanxi Coal did not acquire or assume any business, customers, vendors, business partners, contracts, employees or goodwill from the sellers, nor did Shanxi Coal assume any indebtedness or liabilities from them.

As previously disclosed in the Company's current report on Form 8-K filed August 5, 2010, on August 1, 2010, Shanxi Coal entered into an investment cooperation agreement with Ming Zhao, Chairman of the Company's Board and its principal stockholder, and Jianping Gao, an individual unrelated to the Company (the "Investment Cooperation Agreement"). Pursuant to the agreement, the parties will purchase, consolidate and re-develop certain coal mines in Pinglu County, Shanxi Province, including the coal mines described above. Shanxi Coal, Mr. Zhao and Mr. Gao will contribute 40%, 30% and 30%, respectively, of the total investment needed for the project. Shanxi Coal will be the project manager; in addition, each of Mr. Zhao and Mr. Gao has agreed to transfer 5.5% of his respective voting rights in the project companies, which will hold the coal mines after they are acquired, to Shanxi Coal to enable Shanxi Coal to exercise full operating and management control of the project companies. The parties will share the profits based upon the above investment contribution percentages and bear the risks and losses in connection with the project which will be limited by the amount of investment contributed by each party. The parties further agree that, once the coal mines to be acquired and consolidated under the project are operational, to the extent permitted by the Chinese law, at least 80% of the audited annual net profits of the project companies established after the coal mine acquisition will be distributed to the parties at a ratio that is proportionate to their respective investment. Shanxi Coal is entitled to purchase the equity interest of Mr. Zhao and/or Mr. Gao in the project companies at Shanxi Coal's sole discretion at a price determined by an independent professional appraiser.

A new project company named Shanxi Pinglu Dajinhe Anrui Coal Industry Co., Ltd. will hold the assets and mining rights of the above acquired mines.

Neither the Company, Shanxi Coal or their affiliates, nor any director, officer or any associate of any such director or officer thereof, has any material relationship with the sellers other than in respect of the above disclosed agreements

54.    On March 14, 2011, Defendants issued a press release announcing its financial results for its 2010 fourth quarter and year end, the period ended December 31, 2010. For the quarter, the Company reported revenue of $90.5 million, and net income of $4.4 million or $0.18 per diluted share. For the year, the Company reported revenue of $324.8 million and net income of $23.5

million, or $1.15 per diluted share. Defendant Zhu commented on the Company's results, stating, in pertinent part, as follows:

> We ended 2010 on a positive note generating approximately $20 million cash flow from our legacy coal washing business driven by strong revenue and net income growth. Our well established customer relationships and the continued recovery of the steel industry fuelled double-digit year-over-year growth in sales volume and average selling prices of our high quality cleaned coal. With our strong balance sheet and solid financial position, we are well prepared to execute our coal mine consolidation projects in 2011. We have achieved significant milestones in this area in recent months and are confident in our ability to transform Puda Coal into an integrated coal washing and mining company.

55.     On March 16, 2011, Defendants filed with the SEC its Form 10-K for the year ended December 31, 2010 (the "2010 Form 10-K"), which was signed by Defendants Zhu, Wu and Ming Zhao  The 2010 Form 10-K included at least the following false and misleading representations:

> Our operations are conducted exclusively through Shanxi Coal, in which we own 90% of the equity interest.

*     *     *     *

> As of December 31, 2010, the percentages owned by Mr. Ming Zhao and Mr. Yao Zhao in the companies are as follows:
>
> > Puda Coal, Inc.: Mr. Ming Zhao (approximately 25%); Mr. Yao Zhao (approximately 6%) held directly.
>
> > Puda Investment Holding Limited: Mr. Ming Zhao (approximately 25%); Mr. Yao Zhao (approximately 6%) held indirectly through Puda.
>
> > Shanxi Putai Resources Limited: Mr. Ming Zhao (approximately 25%); Mr. Yao Zhao (approximately 6%) held indirectly through Puda and BVI.
>
> > Shanxi Puda Coal Group Co., Ltd.: Mr. Ming Zhao (10%) held directly, Mr. Ming Zhao (approximately 23%) held indirectly through Puda, BVI and Putai.  Mr. Yao Zhao (approximately 5%) held indirectly through Puda, BVI and Putai.

*     *     *     *

> Our management, including the Chief Executive Officer and Chief Financial Officer, assessed as of December 31, 2010 the effectiveness of the Company's internal

- 34 -

control over financial reporting. In making this assessment, management used the criteria set forth in the framework in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on the results of this evaluation, management has concluded that the Company's internal control over financial reporting as of December 31, 2010 was effective.

56.     The statements referenced above in ¶¶35-55 were each materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to the Individual Defendants or recklessly disregarded by them:

(a)     that, prior to the beginning of the Class Period, Defendants Ming Zhao and Yao Zhao fraudulently transferred Puda's ownership interest to Defendant Ming Zhao;

(b)     that, based on the forgoing, Puda was nothing more than a shell company during the Class Period;

(c)     that Puda's reported operating results and financial condition were materially overstated;

(d)     that Puda was not a party to the numerous material corporate agreements entered into by Shanxi Coal during the Class Period;

(e)     that Puda's financial statements were not fairly presented in conformity with U.S. Generally Accepted Accounting Principles and were materially false and misleading;

(f)     that Puda was operating with material deficiencies in its system of internal control over its financial reporting; and

(g)     that, based on the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and growth.

57.     On April 8, 2011, Puda issued a press release announcing that it was currently reviewing the allegations regarding improper share transactions by Defendant Ming Zhao, which

were published in an article entitled "Puda Coal Chairman Secretly Sold Half the Company and Pledged the Other Half to Chinese PE Investors" by a short-seller that same day.

58.     In reaction to the short-seller's article and the Company's press release, shares of the Company's stock declined more than 34%, on April 8, 2011, on extremely heavy trading volume.

59.     On April 11, 2011, Puda announced that it unanimously ratified the Audit Committee's decision to launch a full investigation into the allegations raised in the short-seller's article alleging various unauthorized transactions in the shares of a subsidiary company, Shanxi Coal. Moreover, Defendants announced that its Audit Committee retained professionals in the U.S. and China to assist it in its investigation and that its Board of Directors, including Defendant Ming Zhao, the Chairman of Puda Coal, agreed to cooperate in the investigation.

60.     The April 11, 2011 press release noted that, "[a]lthough the investigation is in its preliminary stages, evidence supports the allegation that there were transfers by Mr. Zhao in subsidiary ownership that were inconsistent with disclosure made by the Company in its public securities filings. Mr. Zhao has agreed to a voluntarily leave of absence as Chairman of the Board of the Company until the investigation is complete."

61.     In response to the above announcements, the NYSE halted trading in the Company's stock on April 11, 2011.

62.     The market for Puda common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Puda common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Puda common stock relying upon the integrity of the market price of Puda common stock and market information relating to Puda, and have been damaged thereby.

- 36 -

63.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Puda common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

64.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Puda's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Puda and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**Additional Scienter Allegations**

65.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

information reflecting the true facts regarding Puda, their control over, and/or receipt and/or modification of Puda's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning Puda, participated in the fraudulent scheme alleged herein.

66.     Defendants were further motivated to engage in this course of conduct in order to raise much needed capital by enabling Puda to sell its securities at artificially inflated prices to unsuspecting investors during the Class Period.

**Loss Causation/Economic Loss**

67.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Puda common stock and operated as a fraud or deceit on Class Period purchasers of Puda common stock by failing to disclose and misrepresenting the adverse facts detailed herein.   When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Puda common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Puda common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

68.     By failing to disclose to investors the adverse facts detailed herein, defendants presented a misleading picture of Puda's business and prospects. Defendants' false and misleading statements had the intended effect and caused Puda common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $16.47 per share on Dec. 2, 2010.

69.     As a direct result of defendants' disclosures on April 8, 2011 and April 11, 2011, the price of Puda common stock fell precipitously, falling from its closing price of $9.10 per share on April 7, 2010 to $6.00 per share on April 8, 2011 – a loss of $3.10 per share or over 34%. This drop

removed the inflation from the price of Puda common stock, causing real economic loss to investors who had purchased Puda common stock during the Class Period.

70.    The over 34% decline was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the price decline in Puda common stock negates any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Puda common stock and the subsequent significant decline in the value of Puda common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance: Fraud on the Market Doctrine

71.    At all relevant times, the market for Puda common stock was an efficient market for the following reasons, among others:

(a)    Puda common stock met the requirements for listing, and was listed and actively traded on the AMEX, a highly efficient and automated market;

(b)    as a regulated issuer, Defendants filed periodic public reports with the SEC and the AMEX;

(c)    Puda regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Puda was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

72.    As a result of the foregoing, the market for Puda common stock promptly digested current information regarding Puda from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of Puda common stock during the Class Period suffered similar injury through their purchase of Puda common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

73.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Puda who knew that those statements were false when made.

## COUNT I

## Violation of Section 10(b) of
## the Exchange Act and Rule 10b-5
## Promulgated Thereunder Against All Defendants

74.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75.     During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

76.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

77.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Puda common stock. Plaintiff and the Class would not have purchased Puda common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

78.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Puda common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80.     The Individual Defendants acted as controlling persons of Puda within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of Puda, and their ownership of Puda stock, the Individual Defendants had the power and authority to cause Puda to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  April 14, 2011

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARIO ALBA JR.

MARIO ALBA JR.

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone: 303/861-1764
303/395-0393 (fax)

HOLZER, HOLZER & FISTEL, LLC
MICHAEL I. FISTEL, JR.
MARSHALL DEES
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
Telephone:  770/392-0090
770/392-0029 (fax)

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| PUDA | 9-19-2007 | 357 | # 3575 |
|  | 6-22-2010 | 2000 | 18118 |
|  | 11-9-2010 | 2000 | 25080 |
|  | 11-9-2010 | 1000 | 12540 |
|  | 12-9-2010 | 1000 | 12430 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| PUDA |  |  |  |

5.      During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _14th_ day of _APR_, 2011 in _KENNESAW_, _GA._.
                                                          City              State

(Signature) X _____

(Print Name) _____DAN KORACH_____

2